**[J-83-2020] [MO: Mundy, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| FIREARM OWNERS AGAINST CRIME; KIM STOLFER; JOSHUA FIRST; AND HOWARD BULLOCK, | : | No. 29 MAP 2020 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court dated |
| Appellees | : | September 12, 2019, |
| | : | reconsideration denied October 23, |
| | : | 2019, at No. 1434 CD 2018 |
| v. | : | Affirming in Part & Reversing in Part |
| | : | the Order of the Dauphin County |
| | : | Court of Common Pleas, Civil |
| CITY OF HARRISBURG MAYOR ERIC | : | Division, dated October 9, 2018 at |
| PAPENFUSE; AND POLICE CHIEF | : | No. 2015-CV-354-EQ |
| THOMAS CARTER, | : | |
| | : | ARGUED: December 1, 2020 |
| Appellants | : | |

**DISSENTING OPINION**

**JUSTICE DONOHUE**                    **DECIDED: October 20, 2021**

I dissent. Ostensibly in an effort to liberally construe the Declaratory Judgments Act,[1] what the Majority instead accomplishes is the elimination of the foundational requirement for any plaintiff to maintain a cause of action – that the plaintiff be aggrieved.

The Declaratory Judgments Act is undeniably intended to be liberally construed. The General Assembly declared that the purpose of the Act is "to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations and is to be liberally construed and administered." 42 Pa.C.S. § 7541(a). Indeed, the recognition of pre-enforcement statutory challenges embraces the liberal construction principle. Likewise, the Declaratory Judgments Act is available to an **interested** person who may

---

[1] 42 Pa.C.S. §§ 7531-7541.

have determined any question of validity under a statute or ordinance and obtain a declaration of rights thereunder. *Id.* § 7533.

From the language of the Declaratory Judgments Act, we know that a plaintiff must be uncertain or insecure in his or her rights under a statute or ordinance in order to have those rights determined under the challenged statute or ordinance. *Id.* § 7541(a). To establish the requisite uncertainty or insecurity and thus, attain standing, "a plaintiff must allege an interest which is direct, substantial and immediate[.]" Majority Op. at 23. As the writings in this case establish, this Court has visited the availability of pre-enforcement review of a legislative branch enactment on many occasions and concluded that such review is available under the Declaratory Judgments Act if the three types of interest are alleged. Through these cases, we have determined that the uncertainty and insecurity earmarked for resolution under the Declaratory Judgments Act must be actual uncertainty and insecurity, not hypothetical, speculative or theoretical. What distinguishes this case from the many that came before it is that the Appellees here have alleged **no facts** to establish entitlement to a court's adjudication of their claim for declaratory relief.

Respectfully, the Majority marginalizes the allegations in support of the plaintiffs' standing in the cases they rely upon to expansively confer standing on these Appellees in their pre-enforcement constitutional challenges to the City of Harrisburg's ordinances.[2] In prior cases in which we found pre-enforcement standing, the plaintiffs alleged concrete circumstances that resulted in their actual aggrievement by the enactments they sought to challenge. There are no such allegations here. Appellees filed a complaint based solely on their ownership of firearms and subjective fear of prosecution. As Chief Justice

---

[2] City of Harrisburg Code § 3-345.1 (prohibiting unaccompanied minors from possessing firearms outside of their residences); *Id.* § 3-345.2 (prohibiting discharge of weapons in Harrisburg); *Id.* § 3-345.4 (requiring reporting of lost and stolen firearms); *Id.* § 10-301.13 (prohibiting firearms and weapons in parks).

Baer insightfully explains, at the time Appellees filed their Complaint, they asserted that they "lawfully possessed firearms" because this assertion alone "was sufficient to afford them standing to commence the instant litigation." Dissenting Op. at 5. Relying on Act 192,[3] which has since been declared unconstitutional,[4] Appellees did not allege that the provisions they sought to challenge actually and concretely aggrieved them, that they had been forced to modify their conduct to conform to the law, or that they wished to act contrary to the law. The Majority's stark departure from our precedent to confer standing on these plaintiffs is evident from a review of those cases where the plaintiffs alleged that they would be directly and immediately harmed by enforcement of the challenged provision.

In *O'Connor v. City of Philadelphia Board of Ethics*, 13 A.3d 464, 471 (Pa. 2011), the Cozen O'Connor law firm challenged the interpretation in an ethics opinion of Sections 1002(1) and (2) of the Philadelphia Code[5] by the Philadelphia Board of Ethics ("Ethics Board"). The opinion had been solicited to guide the conduct of the law firm.[6] The Ethics Board issued a formal opinion concluding that contributions exceeding Sections 1002(1) and (2)'s limits, "which are received after an election to retire campaign debt, are

_____

[3]  Act 192 of Nov. 6, 2014, P.L. 2921.

[4]  *Leach v. Commonwealth*, 141 A.3d 426, 435 (Pa. 2016).

[5] Philadelphia Code §§ 20-1002(1) & (2) (regarding contribution limits for candidates for City elective office).

[6]  The Friends of Bob Brady Campaign Committee ("Committee"), a political action committee supporting Robert Brady's campaign for the Democratic Party nomination to serve as Mayor of Philadelphia, sought an advisory opinion to determine how it could legally retire outstanding debt it owed to the firm following the election. More specifically, the Committee sought to retire $448,468.09 in legal fees owed to the firm for its representation of candidate Brady in a legal dispute regarding the election. *O'Connor*, 13 A.3d at 465. Thus, the advisory opinion was sought to guide the conduct of the Committee and the firm with regard to the outstanding debt the Committee owed the firm.

prohibited." *Id.* at 466. The firm filed a declaratory judgment action seeking a declaration that post-election contributions were not "contributions" within the meaning of the Philadelphia Code.[7] In its complaint, the firm alleged that it was aggrieved by the Ethics Board opinion, stating that the Ethics Board and the City " 'improperly restricted … its ability to raise funds to pay off post-campaign debts and [the firm], according to the [Ethics Board and the City], cannot forgive the debt without violating election laws.' " *Id.* at 466 (citing Complaint, ¶ 8). The firm also alleged that, if the Ethics Board opinion's interpretation stands, it " 'would be legally unable to forgive any of the debts owed to it by the campaign… .' " *Id.* at 471 (citing Complaint, ¶ 67). In addressing whether the firm had standing, this Court observed that, "[a]lthough the [f]irm did not set forth the exact phrase 'that it intends to forgive the debt at one time and *in toto*,' such is certainly contemplated by the above cited paragraphs[]" from the Complaint. *Id.* at 471-72. The Court thus cited to specific paragraphs of the Complaint as evincing the firm's desire to forgive the debt contrary to the Ethics Board's interpretation of Sections 1002(1) and (2) of Philadelphia Code.[8] The firm was aggrieved in that it could not forgive the debt and the Complaint contained allegations that it desired to do so.

---

[7] Philadelphia Code § 20-1001(6) (defining contributions).

[8] The complaint in *O'Connor* explicitly alleged that " 'the [f]irm would be unable to forgive any of the debt owed to it by the campaign,' " under the Ethics Board's interpretation. *O'Connor*, 13 A.3d at 471 (citing Complaint, ¶ 67). The Ethics Board asserted that the firm did not adequately plead that it **intended** to forgive the debt because it did not explicitly state that the firm intended to forgive the debt at one time and in toto. The Court did not excuse the firm from alleging that it was concretely impacted by the Ethics Board's interpretation of the code but recognized that there are no magic words that a plaintiff must use to set forth an intention to act contrary to the law (the Ethics Board opinion) to satisfy the direct and immediate harm requirements. There, the complaint "certainly contemplated" such an intention and therefore, satisfied the requirements. *Id.* at 472.

In *Robinson Township v. Commonwealth*, 83 A.3d 901 (Pa. 2013), each of the plaintiffs bringing a challenge to Act 13[9] alleged the specific manner in which they were actually aggrieved by its implementation. First, the physician asserted that the challenged provisions of Act 13 "impede[d] his ability to diagnose and treat his patients properly." *Id.* at 923. Second, members of the Delaware Riverkeeper Network alleged that their home values were negatively impacted by the change in the zoning laws which would permit oil and gas operations in their districts.[10] *Id.* at 922. Finally, various municipalities alleged that Act 13 "require[d] them … to create new exceptions for the oil and gas industry that are inconsistent with long-established municipal land use plans." *Id.* at 919. As such, the physician, Delaware Riverkeeper Network, and the municipalities all alleged that they were concretely and negatively impacted by the implementation of Act 13 because their current conduct or actual circumstances were modified by its dictates.

In *Commonwealth, Office of Governor v. Donahue*, 98 A.3d 1223 (Pa. 2014), after the Office of the Governor ("OG") was subjected to the Office of Open Records' ("OOR") interpretation of Section 901 of the Right to Know Law ("RTKL"),[11] which shortened the window for responding to RTKL record requests, it sought to challenge OOR's interpretation of Section 901. The OG contended that the interpretation made it difficult to timely respond to RTKL requests and comply with Section 901, which meant a greater likelihood of deemed denials, and an increase in the number of RTKL matters that OG would have to adjudicate. *Id.* at 1230. More specifically, the OG alleged that OOR's

---

[9] Act 13 of Feb. 14, 2012, P.L. 87, 58 Pa.C.S. §§ 2301-3504.

[10] The Court addressed Delaware Riverkeeper Network's standing by piggybacking on the Commonwealth's concession that landowners Brian Coppola and David M. Ball, who claimed that their home values were negatively affected by the oil and gas operations, had standing. *Robinson Twp.*, 83 A.3d at 918.

[11] Act 3 of Feb. 14, 2008, P.L. 6, 65 P.S. § 67.901.

interpretation "would force OG to alter both the manner in which it communicates with the public and the manner in which it litigates RTKL matters, thus imposing significant administrative burdens on OG." *Id.* at 1229. The OOR's interpretation had already resulted in aggrievement and would continue to do so if not addressed and corrected by the courts. The OG thus described how it was significantly burdened by the OOR's interpretation of the timing provision because its current protocols were impacted.

In *Yocum v. Gaming Control Board*, 161 A.3d 228 (Pa. 2017), a member of the Gaming Control Board alleged that she desired to pursue a career outside of the Gaming Board, but that law firms had informed her that the employment restrictions[12] she sought to challenge would inhibit potential employers' willingness to hire her. *Id.* at 235 (citing Petition for Review, ¶¶ 23, 31-33). She demonstrated she was concretely aggrieved by the employment restrictions by alleging that she was legally prohibited from seeking employment in the gaming field, that she desired to do so, and that employers in the field told her the restrictions would inhibit her ability to obtain employment. *Id.* The plaintiff alleged the challenged provisions negatively and concretely affected her current circumstances.

As demonstrated, the plaintiffs in *O'Connor, Robinson Township, Donahue,* and *Yocum* filed Declaratory Judgments Act actions to challenge laws which concretely and negatively impacted their actual circumstances at the time of filing their complaints.[13] In

---

[12]  4 Pa.C.S. § 1201(h)(8).

[13]  The same is true for the cases cited by the Majority involving pre-enforcement challenges to laws not brought under the Declaratory Judgments Act. In each of the cases, the plaintiffs made allegations that they were actually aggrieved by the enforcement of the challenged law. In *Arsenal Coal Co. v. Commonwealth, Department of Environmental Resources*, 477 A.2d 1333, 1340 (Pa. 1984), anthracite coal mine operators and producers challenged regulations imposed specifically on their industry and operations and "alleged that the regulations require the expenditure of substantial sums of money to comply which, while not immediately calculable, will substantially impair

each of these cases, the challenged laws required the plaintiffs to modify their behavior to their detriment, thereby establishing not only an interest superior to the ordinary citizen but a demonstrable interest that was direct and immediate. Respectfully, it is not possible to reconcile these cases with the Majority's holding in this case.

The complaint in this case includes no allegations regarding how the challenged ordinances mandate a modification of the Appellees' current activities or Appellees' intent to engage in any of the regulated conduct. Appellees rely on the abstract concept that these ordinances "have a causal effect on [their] lawful ownership, possession, transport, transfer, and use of firearms in the City… ." Appellees' Brief at 22. While this may theoretically be true, nothing in the ordinances criminalize these attributes of gun ownership. Unless the ordinances have an actual impact on the Appellees' conduct, there is no justiciable interest and the Appellees lack standing to seek a declaration that the ordinances are unconstitutional.

_____

the[ir] cash flow[.]" There was no question that compliance would be immediate and costly.

In *Shaulis v. Pennsylvania State Ethics Commission*, 833 A.2d 123, 125 (Pa. 2003), the attorney who had recently retired from working in the Office of Chief Counsel in the Pennsylvania Department of Revenue, filed a petition for review challenging a Pennsylvania State Ethics Commission opinion restricting her representation of clients in matters involving the Department of Revenue. The Ethics Commission opinion aggrieved her in that it "effectively estopped" her from practicing her chosen profession. *Id.* at 130.

In *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269, 288 (Pa. 1975), parking garage operators alleged that the tax established by Ordinance No. 30 of 1973 would cause "a substantial loss to their net income." Compliance with the mandate impacted their current operations.

The plaintiffs in *Arsenal Coal Company, Shaulis,* and *William Penn Parking Garage* were engaged in the precise activity regulated by the challenged regulations. The plaintiffs in the case before us do not allege any such engagement in the conduct regulated in the ordinances or the likelihood that they will engage in the conduct or even their desire to do so.

While a firearm owner may have an interest in these ordinances that is substantial when compared with the interest of an ordinary citizen in upholding the law, mere ownership of a firearm does not establish an immediate or direct interest in the ordinances. Our standing precedent, as set forth in *O'Connor, Robinson Township, Donahue,* and *Yocum,* requires that a plaintiff's conduct or concrete circumstances must be immediately and negatively impacted by the challenged statute or ordinance such that the conduct or circumstances are causally affected by the enactment. These plaintiffs have not alleged any facts to indicate that the ordinances, in any way, impact their actual conduct, activities or plans. Without that causal effect (conduct affected by the ordinances), the Appellees do not have standing to bring this declaratory judgment action.

I join the dissenting opinion of Chief Justice Baer and would reverse the decision of the Commonwealth Court.

Chief Justice Baer and Justice Todd join this dissenting opinion.