**[J-83-2020] [MO: Mundy, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| FIREARM OWNERS AGAINST CRIME; KIM STOLFER; JOSHUA FIRST; AND HOWARD BULLOCK, | : | No. 29 MAP 2020 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court dated |
| Appellees | : | September 12, 2019, |
| | : | reconsideration denied October 23, |
| | : | 2019, at No. 1434 CD 2018 |
| v. | : | Affirming in Part & Reversing in Part |
| | : | the Order of the Dauphin County |
| | : | Court of Common Pleas, Civil |
| CITY OF HARRISBURG MAYOR ERIC | : | Division, dated October 9, 2018 at |
| PAPENFUSE; AND POLICE CHIEF | : | No. 2015-CV-354-EQ. |
| THOMAS CARTER, | : | |
| | : | ARGUED:  December 1, 2020 |
| Appellants | : | |

## CONCURRING OPINION

**JUSTICE WECHT**                                    **DECIDED:  October 20, 2021**

Like many municipalities, Harrisburg has attempted to protect the health, safety, and welfare of its citizens by attempting to regulate the discharge and possession of firearms within municipal limits.  As the Majority aptly relates, individual gun owners and an association that represents them ("Appellees") brought a declaratory judgment action to invalidate these ordinances on constitutional and statutory grounds.[1]  Without reaching the merits, the trial court found that Appellees lack standing, and dismissed the complaint. The Commonwealth Court reversed, holding that Appellees demonstrated standing to challenge the ordinances, a decision the Majority affirms.

---

[1]      *See* U.S. CONST. amend. II; PA. CONST. art. I, § 21; 18 Pa.C.S. §§ 6101-6128.

I agree with the Majority that Appellees have established standing, and I join the Majority Opinion in full. Standing is a prudential requirement that has evolved in this Commonwealth with enough flexibility to account for pre-enforcement review of government enactments. We do not require citizens to become lawbreakers in order to bring such challenges, nor do we require citizens quietly to abdicate their individual rights and submit to legislation that they believe violates those rights. This is true whenever government enactments force the choice between forfeiting one's rights or complying with the law. It is as true for the right to bear arms as it is for other constitutional rights. And it is as true even when this choice does not implicate professional or pecuniary interests.

To obtain judicial resolution of a controversy, a party must first establish standing to maintain the action. *Bergdoll v. Kane*, 731 A.2d 1261, 1268 (Pa. 1999). Standing depends upon whether the party is aggrieved. *William Penn Parking Garage, Inc. v. Pittsburgh*, 346 A.2d 269, 281 (Pa. 1975). One who is not adversely affected by the measure that he or she seeks to challenge is not aggrieved and, therefore, has no standing to obtain judicial resolution of the challenge. *Id.* "[I]t is not sufficient for the person claiming to be 'aggrieved' to assert the common interest of all citizens in procuring obedience to the law." *Id.* As the Majority recognizes, the established formulation to determine that an individual is aggrieved requires a "substantial, direct, and immediate" interest in the claim sought to be litigated. Maj. Op. at 22; *accord Bergdoll*, 731 A.2d at 1268.

> A "substantial" interest is an interest in the outcome of the litigation which surpasses the common interest of all citizens in procuring obedience to the law. A "direct" interest requires a showing that the matter complained of caused harm to the party's interest. An "immediate" interest involves the nature of the causal connection between the action complained of and the injury to the party challenging it.

*S. Whitehall Twp. Police Serv. v. S. Whitehall Twp.*, 555 A.2d 793, 795 (Pa. 1989) (citations omitted).

Application of the traditional standing formula to sundry circumstances has refined the Commonwealth's standing jurisprudence over time. At its core, standing is a flexible construct that enables judicial redress when the government has engaged in conduct or enacted laws that infringe the rights held by the citizenry. As we explained in *Commonwealth, Office of Governor v. Donahue*, 98 A.3d 1223, 1229 (Pa. 2014), "the doctrine of standing . . . is a prudential, judicially-created principle designed to winnow out litigants who have no direct interest in a judicial matter." Our notions of standing provide access to the justice system to challenge the validity of government actions, implementing the promise that "[a]ll courts shall be open; and every man for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay." PA. CONST. art. I, § 11.

The question of standing in this case arises in the context of a pre-enforcement action under the Declaratory Judgments Act ("Act"), the purpose of which "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." 42 Pa.C.S. § 7541(a). To this end, the Act "is to be liberally construed and administered." *Id.* The Act expands access to judicial redress of controversies, as the plaintiff does not have to establish that "an actual wrong" has been done or is "immediately threatened." *Petition of Kariher*, 131 A. 265, 268 (Pa. 1925). Rather, to sustain an action under the Act, the plaintiff must "demonstrate an 'actual controversy' indicating imminent and inevitable litigation, and a direct, substantial and present interest." *Unified Sportsmen of Pa. v. Pa. Game Comm'n*, 950 A.2d 1120, 1132 (Pa. Cmwlth. 2008) (quoting *Wagner v. Apollo Gas Co.*, 582 A.2d 364, 366 (Pa. Super. 1990)); *see also Petition of Cap. Bank & Tr. Co.*, 6 A.2d 790, 792 (Pa. 1939) ("the vital factor in the assumption of jurisdiction [under the Act] is the presence of antagonistic claims

indicating imminent and inevitable litigation, coupled with a clear manifestation that the declaration sought will be a practical help in ending the controversy").

The Act expands the understanding of harm beyond that which has actually occurred to include also that which is inevitable or imminent.[2] The Act is well-suited to a pre-enforcement action, as it was designed to provide relief from uncertainty and insecurity with respect to rights and legal relations as a mechanism to challenge the legality of government enactments without requiring the plaintiff to await enforcement and subject herself to criminal sanction. *See* 42 Pa.C.S. § 7541(a).

As Justice Saylor has insightfully observed, there is "tension between" liberal application of the Act and "stringent application of traditional standing criteria" requiring the plaintiff to demonstrate a direct, substantial, and present interest in the outcome of the litigation. *Pittsburgh Palisades Park, LLC v. Commonwealth*, 888 A.2d 655, 663 (Pa. 2005) (Saylor, J., dissenting). Notwithstanding this apparent tension, we have held that the availability of declaratory relief under the Act is limited by justiciability concerns: In

---

[2]     In the past, we described the circumstances necessary to confer standing under the Act as an "actual controversy, or the ripening seeds of one," between the parties. *In re Cryan's Est.*, 152 A. 675, 678-79 (Pa. 1930); *In re Sterrett's Est.*, 150 A. 159, 161 (Pa. 1930); *In re Pittsburgh's Consol. City Charter*, 147 A. 525, 526 (Pa. 1929); *Reese v. Adamson*, 146 A. 262, 263 (Pa. 1929); *Lyman v. Lyman*, 143 A. 200, 201 (Pa. 1928); *Kariher*, 131 A. at 271. "Ripening seeds" means "a state of fact indicating 'imminent' and 'inevitable' litigation." *Cryan's Est.*, 152 A. at 679. We have explained the difference between an actual controversy and inevitable litigation as follows:

> If differences between the parties concerned, as to their legal rights, have reached the stage of antagonistic claims, which are being actively pressed on one side and opposed on the other, an actual controversy appears; where, however, the claims of the several parties in interest, while not having reached that active stage, are nevertheless present, and indicative of threatened litigation in the immediate future, which seems unavoidable, the ripening seeds of a controversy appear.

*Id.*

order to bring an action under the Act, "a plaintiff must allege an interest which is direct, substantial and immediate, and must demonstrate the existence of a real or actual controversy, as the courts of this Commonwealth are generally proscribed from rendering decisions in the abstract or issuing purely advisory opinions." *Donahue*, 98 A.3d at 1229; *see also* Maj. Op. at 23 (observing that the Court applies the traditional "substantial-direct-immediate test for standing" in pre-enforcement declaratory judgment actions); *Robinson Twp. v. Commonwealth*, 83 A.3d 901, 917-25 (Pa. 2013) (applying the traditional standing requirements to a pre-enforcement declaratory judgment); *Cozen O'Connor v. City of Phila. Bd. of Ethics*, 13 A.3d 464, 468-72 (Pa. 2011) (same); *Upper Bucks Cnty. Vocational-Tech. Sch. Educ. Ass'n v. Upper Bucks Cnty. Vocational-Tech. Sch. Joint Comm.*, 474 A.2d 1120, 1122 (Pa. 1984) (same).[3]

In pre-enforcement cases, standing is premised upon the real and intolerable dilemma that plaintiffs confront: on the one hand, abdicating or forfeiting their individual rights, or, on the other, exercising these rights and suffering the might of government. In such scenarios, there is an alternative, a path to the courthouse that permits these plaintiffs to seek judicial review of challenged provisions that threaten their rights and interests. In *Yocum v. Pennsylvania Gaming Control Board,*, 161 A.3d 228, 236-37 (Pa. 2017), we found standing where the plaintiff faced the choice of either violating a statute by accepting new employment in the gaming industry, or complying with the statute and forfeiting her right to seek employment in her field of expertise. In *Donahue*, 98 A.3d at 1229-30, standing was premised upon the choice that a government agency faced: either waste agency resources by complying with an arguably erroneous interpretation of the

---

[3]  As the Majority observes, pre-enforcement actions brought outside of the Act must also conform to the traditional requirements of standing. Maj. Op. at 30 n.14; *Shaulis v. Pa. State Ethics Comm'n*, 833 A.2d 123 (Pa. 2003); *Arsenal Coal Co. v. Commonwealth,* 477 A.2d 1333 (Pa. 1984).

Right to Know Law by the Office of Open Records, or willfully violate that interpretation and run the risk of increased deemed denials of record requests and an increase in the number of appeals in which the agency would have to participate.

Similarly, in *Robinson Township*, 83 A.3d at 924, we recognized that the physician-plaintiff should not be forced to choose between violating a statutory confidentiality agreement and violating his legal and ethical obligations to treat a patient in accord with medical standards, or, alternatively, declining to take patients whose care may implicate the statutory confidentiality agreement. In *Cozen O'Connor*, 13 A.3d at 472, we found standing where a law firm was forced to choose between violating campaign contribution laws by forgiving a client's debt, or declining to engage in the potentially prohibited conduct. In *Bayada Nurses, Inc. v. Commonwealth Department of Labor and Industry*, 8 A.3d 866, 876 (Pa. 2010), where a nursing home challenged wage and hour regulations, we found standing where the nursing home was faced with the option of violating the regulations and incurring penalties and fines, or complying with what it believed to be erroneous requirements. In *Shaulis v. Pennsylvania State Ethics Commission*, 833 A.2d 123, 125, 127 (Pa. 2003), *abrogated in part by Yocum* 161 A.3d at 237, we held that an attorney had standing where she faced the choice of declining to publish articles or books or violating state ethics rules. And in *Arsenal Coal Co.,* 477 A.2d at 1334-38, standing was premised upon the choice faced by a coal company of compliance with environmental regulations or noncompliance, both of which would impose great costs.

These cases establish a flexible construction of standing designed to avoid placing a plaintiff in the position of having to choose between relinquishing his or her rights and risking punishment for failing to obey a challenged enactment. Where standing is at issue, the germane inquiry will examine the choices that the plaintiff faces when confronting the application or enforcement of a statute, regulation, or ordinance, and the nature of the

interest affected. If the government action casts the plaintiff upon the horns of a dilemma—having to choose between exposing herself to sanctions or abrogating her individual rights—then there is a controversy that is subject to judicial resolution.

Appellees here face equally intolerable options that render their action consistent with the conferral of standing in our precedential opinions. The choice between engaging in arguably constitutional activity and facing potential prosecution, or forfeiting one's rights and abstaining from potentially protected conduct altogether, presents precisely the kind of choice that confers standing. *See* Maj. Op. at 32 (recognizing that "Appellees currently must make a choice to either comply with the ordinances, thereby forfeiting what they view as their constitutionally and statutorily protected firearms rights; or violate the ordinances by exercising their rights, thereby risking criminal prosecution"). Without access to the courts to resolve their dispute, Appellees would be left with no path to challenge the constitutionality of the ordinances other than willfully violating the law.

In centering the standing analysis on the choice a government action imposes upon a plaintiff, this Court explained in *Robinson Township,* 83 A.3d at 924, that "[o]ur existing jurisprudence permits pre-enforcement review of statutory provisions in cases in which petitioners must choose between equally unappealing options and where the third option . . . is equally undesirable." This Court recognized the "unpalatable professional choices" imposed upon the physician-plaintiff, and observed the "untenable and objectionable position" in which statutory compliance placed the physician. *Id.* These adjectives—unappealing, undesirable, unpalatable, untenable, and objectionable— confuse rather than clarify the position a plaintiff must encounter in order to demonstrate standing. While I agree that standing is premised upon being put in an intolerable position by government enactments, I question this Court's continued use of these descriptors. These identifiers are drawn solely from *Robinson Township* (repeated, alas, in *Yocum*,

161 A.3d at 233), and they do not necessarily capture the severity of the position in which a plaintiff must find herself in order to establish standing.

Life is full of "unappealing options," "unpalatable choices" and "undesirable" "options."[4] To establish standing, it is not sufficient for a plaintiff to allege that she faces a choice between alternatives that are displeasing or objectionable. Statutes, regulations, and ordinances require citizens to conform their behavior to the requirements of the law. Merely to lack the desire to conform, or simply to find the requirements of the law distasteful, is not to gain standing to challenge the law. Discomfort with legal requirements, without more, does not confer standing. Being forced to choose between abdicating one's rights or willfully violating the law and subjecting oneself to sanctions presents exactly the kind of dilemma that does confer standing.

Although this case arises in the context of the right to bear arms, our standing jurisprudence does not favor the Second Amendment and Article I, section 21 over any other constitutional right. Plaintiffs seeking to challenge laws or ordinances must establish standing regardless of the right they seek to vindicate. Challengers relying upon the Second Amendment—like challengers relying upon other constitutional bases—must allege a substantial, direct, and immediate interest.

Pre-enforcement review is an equitable principle driven by the need to avoid imposing impossible choices upon plaintiffs. We do not require plaintiffs to violate laws or regulations and subject themselves to sanctions for engaging in protected conduct as the price of admission to the courthouse. The rights guaranteed to the citizens of this Commonwealth do not depend upon an individual's willingness to subject herself to the

---

[4] The Majority rightfully backs away from invoking these problematic adjectives. Maj. Op. at 36, n.16. I agree with the Majority that the relevant inquiry is whether the challenged government action forces Appellees to choose between submitting to ordinances which they believe violate their constitutional rights or suffering government sanction for vindicating these rights.

risk of jail or criminal penalties to assert her rights. Resolving uncertainty in accord with liberal construction of the Act means that the courthouse doors are open to resolve the constitutionality of statutes and ordinances without requiring that the individual put his or her life, liberty, or property on the line by first violating the statute or ordinance and being subject to enforcement. Nor does the individual have to face economic hardship or professional disaster. Having a substantial interest "simply means that the individual's interest must have substance—there must be some discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law." *William Penn Parking Garage*, 346 A.2d at 282.

Just as there is no special standing exception for the Second Amendment, there is no special standing exception for ethical or professional obligations or for physicians, industrialists, or professionals. *See* Maj. Op. at 37-38. The City views the holding of *Robinson Township* as being limited to circumstances where an individual is presented with "professional choices" between abrogating an ethical or professional responsibility and violating a statute. Appellant's Brief at 20 (quoting *Robinson Twp.*, 83 A.3d at 924). Because Appellees "have no professional or ethical obligation" to discharge their firearms in the City, carry them in a public park, fail to report them lost or stolen, or to allow minor children to possess firearms, the City distinguishes *Robinson Township.* *Id.* at 21. According to the City, without a choice foisted upon the plaintiffs by professional or ethical obligations, there is no harm comparable to that experienced by the physician in *Robinson Township* and, therefore, no standing. *Id.*; Appellant's Reply Brief at 13.

The City is incorrect, and the Majority rightly rejects this proffered limitation on standing. Maj. Op. at 37. We do not require plaintiffs to claim or establish a professional or ethical obligation in order to establish standing under the Act. Nor are plaintiffs required to establish a pecuniary impact on their conduct. While such allegations certainly may

confer standing, standing is not limited to those allegations. To the contrary, the Act is to be "liberally construed and administered" toward the goal of settling and affording "relief from uncertainty and insecurity with respect to rights, status, and other legal relations," 42 Pa.C.S. § 7541(a), without being limited to professional or economic harm. It is enough that Appellees arguably have a constitutional right to engage in prohibited conduct. The City's argument would rob standing of the flexibility that ensures access to the courts to citizens invoking individual constitutional rights and seeking to protect their activities in pursuit of those rights.

I agree with the Majority that Appellees have satisfied all of the prerequisites for standing to bring a declaratory judgment action. As individuals who lawfully possess firearms, and the association that represents them, Appellees seek declaratory and injunctive relief to protect what they view as an infringement upon their constitutional rights and liberties. The position into which the ordinances places them—having to decide between violating the ordinances and subjecting themselves to sanctions or forfeiting what they believe to be their constitutional rights—confers standing within our prudential standing framework. As the lower court observed, "[t]he current, actual, and threatened enforcement of the challenged ordinances has a chilling effect on the Individual Plaintiff's rights to engage in constitutionally protected activities with respect to firearms." *Firearm Owners Against Crime v. City of Harrisburg*, 218 A.3d 497, 506 (Pa. Cmwlth. 2019). Like the physician in *Robinson Township*, Appellees "have no real alternative to address their grievance." *Id.* at 513.

The City would have us restrict our prudential standing construct in a manner reminiscent of standing in the federal courts under Article III of the United States Constitution.[5] Doing so would close the courthouse doors in the Commonwealth to

---

[5] U.S. CONST. art. III.

individuals and organizations seeking to vindicate rights they believe to have been abrogated and unduly circumscribed by state or local action. We are not a federal court, and we are not constrained by the limiting principles that apply under the federal constitution. *See* Maj. Op. at 22.[6]

The legislative branch, the executive branch, and local municipalities bear responsibility for enacting legislation or regulations that do not unduly infringe upon the rights of our citizens. When government conduct is challenged, the judiciary ensures that the rights of the individual are vindicated when infringed. If the government's actions threaten individual rights, those individuals have access to the courts to challenge government conduct. Under the Act, they may do so without first subjecting themselves to arrest, threats of arrest, or warnings about potential enforcement action. As our Founder recognized, delaying justice until one is sanctioned by the full force of the law is no justice at all. *See* WILLIAM PENN, *SOME FRUITS OF SOLITUDE* 86 (Headly Bros. 1905) (1693) ("Our Law says well, to delay justice is injustice.").[7]

---

[6] Unlike federal courts, courts in this Commonwealth are open to resolve all controversies impacting the rights of Pennsylvanians and are vested by Article V, section 1 of the Pennsylvania Constitution with all judicial authority. Our standing considerations account for many varied disputes that would fall short of constituting "cases and controversies" in federal court. As we have observed, "[i]n contrast to the federal approach, notions of case or controversy and justiciability have no constitutional predicate, do not involve a court's jurisdiction, and are regarded instead as prudential concerns implicating courts' self-imposed limitations." *Robinson Twp.*, 83 A.3d at 917; *see also In re Hickson*, 821 A.2d 1238, 1243 n.5 (Pa. 2003) ("State courts. . . are not governed by Article III and are thus not bound to adhere to the federal definition of standing. . . . Furthermore, the Pennsylvania Constitution has no counterpart to Article III's 'case or controversy' requirement."); Hon. Jack Landau, *Forward: State Constitutionalism and the Limits of Judicial Power*, 69 RUTGERS L. REV. 1309, 1310-11 (2017) ("[T]he essential underpinnings of federal justiciability doctrine do not translate well to state courts. The nature of the broad 'judicial power' conferred in state constitutions is different from the limited authority that the framers of our Federal Constitution spelled out in Article III.").

[7] *Accord Muhammad v. Strassburger*, 587 A.2d 1346, 1350 (Pa. 1991) ("Justice delayed is justice denied.") (citation omitted).